11th
Court of Appeals

                                                                  Eastland,
Texas

                                                             Memorandum
Opinion

 

Gary W. Watson

Appellant 

Vs.                   No.
11-02-00274-CV B Appeal from Erath County

Gore Bros., Inc. and Gore=s Inc. 

Appellees

 

Gary W.
Watson (Watson) appeals from a summary judgment granted in favor of Gore Bros.,
Inc. (Gore Bros.) and Gore=s Inc.  The trial court ordered
that Watson take nothing on his claims against Gore Bros. and Gore=s Inc. and further ordered that Watson pay
Gore Bros. $45,546.38, the amount due on a secured note that Watson owed Gore
Bros.  We affirm. 








The
summary judgment evidence shows that Watson was a dairy farmer who resides in
Erath County.  Gore Bros. was a feed
store in Comanche, and Gore=s Inc. was a retail store in Comanche. 
For many years, Watson bought feed for his livestock from Gore Bros. on
an open account basis.  Watson also had
a charge account at Gore Bros. Agri Service, a division of Gore=s Inc. 
In May 2000, Watson=s account balance with Gore Bros. exceeded $38,000.00.  Gore Bros. closed Watson=s open account and told him that he must pay
cash on delivery of any feed that he ordered. 
Watson told Gore Bros. that he would pay with a check when the feed was
delivered.  However, Watson also stated
that there would not be sufficient funds to clear the checks until he received
payment for milk sales.  The parties
operated under that arrangement for a time. 
Larry Alan Stephenson, Credit Manager of Gore Bros., testified in his
deposition that it was his practice to check with the bank to see if Watson=s checks would clear before depositing them
into Gore Bros.=s account. 
Nine checks written by Watson between September 25, 2000, and November
13, 2000, totaling $17,123.39 were returned by Watson=s bank for insufficient funds.  Also, in November 2000, Gore Bros. prepared
a promissory note designed to resolve Watson=s delinquent open account.  The
note was for $45,546.38 with 15 percent 
interest per year.  The note was
secured by Watson=s
livestock.  Watson was to pay the note
in 12 monthly installments of $4,164.04. 
After Watson=s
attorney reviewed the note, Watson signed it on December 1, 2000.  Watson never paid any of the note.  In April 2001, Watson was indicted for 9
counts of appropriating feed belonging to Gore Bros.  

Watson
sued Gore Bros.  He sought a declaratory
judgment that would set forth the correct amount of credit given to him on his
account with Gore Bros.  Watson also
alleged that Gore Bros. used duress in obtaining Watson=s signature on the note, that Gore Bros.
charged an usurious interest on Watson=s open account, and that Gore Bros. engaged in malicious prosecution
and abuse of process in seeking an indictment for the nine returned
checks.  Additionally, Watson alleged
that Gore Bros. intentionally inflicted emotional distress upon Watson by
seeking to destroy Watson financially, physically, and mentally and thereby
obtaining Watson=s livestock at a cheap foreclosure
price.  Watson also claimed that Gore
Bros. violated debt collection practices, as set forth in TEX. FIN. CODE ANN.
ch. 392 (Vernon 1998 & Supp. 2003). 
Watson sought exemplary damages for all the above causes of action, and
he also sought attorney=s fees.  Gore Bros.
counterclaimed for breach of contract and alleged that Watson had not paid any
amount on the note.  Gore Bros. sought
damages in the amount of the note, $45,546.38. 

Gore Bros.
filed a motion for summary judgment, both as defendant and as
counter-plaintiff.  The trial court
granted partial summary judgment for Gore Bros. on Watson=s claims of malicious prosecution and abuse
of process, intentional infliction of emotional distress, and conditional
delivery of post-dated checks. 

 Prior to the time that the trial court
granted partial summary judgment, Watson amended his petition to include Gore=s Inc. in the lawsuit.   In his amended petition, Watson sought a
declaratory judgment that he had not received credit for payments he had
made.  Watson further alleged that he
suffered mental anguish as a result of the duress placed upon him in order to
get him to sign the note.  He also
claimed that both Gore=s Inc.
and Gore Bros. charged him usurious interest. 
The amended petition also includes causes of action for malicious
prosecution and abuse of process, intentional infliction of emotional distress,
and violation of Chapter 392.  Watson
sought exemplary damages and attorney=s fees in his amended petition as well. 








 Gore=s Inc. filed a traditional motion for summary judgment and a
no-evidence motion for summary judgment. 
Gore Bros. filed an amended traditional motion for summary judgment as
defendant and counter-plaintiff.  The
trial court granted all three motions and entered a summary judgment that
Watson take nothing in connection with any of 
his causes of action. The trial court awarded Gore Bros. $45,543.38,
representing the principal amount of the secured note and postjudgment interest
at 10 percent and attorney=s fees in the amount of 
$2,730.00.  

Watson
brings two issues on appeal.  First, he
alleges that the trial court erred in granting Gore Bros.=s and Gore=s Inc.=s motions for summary judgment because there
were numerous material issues of fact. 
Secondly, he alleges that the trial court erred in entering final
judgment without entering an order disposing of  $17,123.39 alleged to be held in the registry of the court. 

A trial
court must grant a traditional motion for summary judgment if the moving party
establishes that no genuine issue of material fact exists and that he is
entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); Lear Siegler,
Inc. v. Perez, 819 S.W.2d 470, 471 (Tex.1991). Once the movant establishes
a right to a summary judgment, the non-movant must come forward with evidence
or law that precludes summary judgment. 
City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671,
678-79 (Tex.1979). When reviewing a summary judgment, the appellate court takes
as true evidence favorable to the non-movant. 
Every reasonable inference must be indulged in favor of the non-movant
and any doubts resolved in its favor. 
American Tobacco Company, Inc. v. Grinnell, 951 S.W.2d 420, 425
(Tex.1997);
Nixon v. Mr. Property Management Company, Inc., 690 S.W.2d 546, 548-49
(Tex.1985).








The trial
court must grant a no-evidence motion for summary judgment unless the
non-movant produces evidence that raises a genuine issue of material fact on
all challenged elements of his claim or defense.  TEX.R.CIV.P. 166a(i). The appellate court reviews evidence
presented in response to a motion for a no-evidence summary judgment in the
same way it reviews evidence presented in support of, or in response to, a
motion for traditional summary judgment: 
it accepts as true evidence favorable to the non-movant and indulges
every reasonable inference and resolves all doubts in favor of the
non-movant.  Hight v. Dublin
Veterinary Clinic, 22 S.W.3d 614, 619 (Tex.App. - Eastland 2000, pet=n den=d); see American Tobacco Company, Inc. v. Grinnell, supra at
425;  Nixon v. Mr. Property
Management Company, Inc., supra at 548-49. 
However, the appellate court reviews only evidence presented by
the non-movant.  Rule 166a(i);  Hight v. Dublin Veterinary Clinic,
supra at 618-19.  If the non-movant
presents more than a scintilla of evidence on the disputed element, a
no-evidence summary judgment is improper. 
Hight v. Dublin Veterinary Clinic, supra;  Denton v. Big Spring Hospital Corporation,
998 S.W.2d 294, 298 (Tex.App. - Eastland 1999, no pet=n);  cf. 
Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706
(Tex.1997), cert. den=d, 523 U.S. 1119 (1998).

Here, Gore=s Inc.=s summary judgment evidence included affidavits by Stephenson, the Credit Manager
of Gore Bros.; Richard B. Hill, the Chief Financial Officer of Gore Bros.; John
Terrill, District Attorney of Erath County; James H. Dudley, attorney for Gore
Bros.; and portions of Watson=s deposition.  Gore Bros.=s motion also contained a copy of the secured
note signed by Watson, a Gore Bros.=s credit application signed by Watson, and a financing statement.  








The
summary judgment evidence shows that Gore=s Inc. is not a proper party to this suit.  Watson alleges duress and mental anguish by Gore=s Inc. in obtaining his signature on the
note.  However, he never provided any
summary judgment evidence that Gore=s Inc. threatened him or harassed him. 
Gore=s Inc. was not a secured party on the note,
and Gore=s Inc. was not a payee on the note.  Stephenson and Hill both offered summary judgment
evidence that the principal of the note was a compilation of the retail and
feed store account at Gore Bros. only. 
Gore=s Inc. was not the recipient of the returned
checks.  The checks that were returned
for insufficient funds were made to Gore Bros. 
Gore=s Inc. did not pursue prosecution of Watson
for the returned checks because Watson did not appropriate any property
belonging to Gore=s
Inc.    Watson attempts to rebut Gore=s Inc.=s summary judgment evidence with his affidavit. Summary judgment may be
granted on affidavits from interested parties; but, such evidence must be
clear, positive, direct, credible, free from contradictions, and susceptible of
being readily controverted. 
TEX.R.CIV.P. 166a.  Conclusory
statements in affidavits are not competent evidence to support a summary
judgment.   Hidalgo v. Surety Savings
and Loan Association, 487 S.W.2d 702, 703 (Tex.1972). Watson=s affidavit is unclear because he refers to AGore@ throughout most of the affidavit. 
There is not a distinction between the two defendants.  Watson=s affidavit also contained conclusory statements.  Further, Watson offered copies of checks and
bills to rebut Gore=s Inc.=s motion for summary judgement.  The checks and bills provided indicate that
the party involved in this dispute is AGore Brother=s Inc.@ not Gore=s Inc.  Appellant contends that
Stephenson and Hill do not state how they obtained personal knowledge of the
facts stated in their affidavits. 
However, Stephenson is the credit manager of Gore Bros., and he testified
in his deposition that he compiled the amount due on the note and that it
included only the accounts of Gore Bros. 
Both Stephenson and Hill, the chief financial officer, have personal
knowledge of the accounts of Gore Bros. based on their positions with the
company.  Gore=s Inc. has established that there was no
genuine issues of material fact and that it is entitled to summary judgment as
a matter of law.  Further, Watson
provided no evidence of Gore=s Inc.=s liability to him.  The trial did not error in granting summary judgment in favor of
Gore=s Inc.  
Watson=s first issue on appeal, insofar as it
pertains to Gore=s Inc., is overruled.  

Gore Bros.=s summary judgment evidence as
counter-plaintiff included:  an
affidavit by Stephenson, the Credit Manager of Gore Bros.; an affidavit by
Hill, the Chief Financial Officer of Gore Bros.; an affidavit of Dudley,
attorney for Gore Bros.; an affidavit of Randall G. Walters regarding
reasonable attorney=s
fees; and portions of Watson=s deposition.  Gore Bros.=s affidavits contained attachments consisting
of a copy of the secured note signed by Watson, a credit application signed by
Watson, and the financing statement.   








The
summary judgment evidence clearly shows that Watson signed the secured note and
that Gore Bros. was the secured party, as well as the holder of the note.  The evidence is clear as to the payments
owed; Watson admitted that he signed the note and had made no payments on it.  See Hudspeth v. Investor Collection
Services Limited Partnership, 985 S.W.2d 477 (Tex.App.  B San Antonio 1998, no pet=n).  Watson alleges that he did
not get credit for $12,530.28 that he paid with cashier=s checks; however, those checks were written
before he signed the note.  If there was
a dispute as to the amount he owed on the account, that dispute was resolved
effectively when Watson signed the note. 
Watson also testified that he signed the note on December 1, 2000, after
he discussed the note with his attorney. 
Under the summary judgment standards of review, we hold that the trial
court did not err in granting counter-plaintiff Gore Bros.=s motion for summary judgment for the amount
due on the note.  Watson=s first issue on appeal is overruled insofar
as it pertains to the award to Gore Bros. as counter-plaintiff.   

Gore Bros.=s summary judgment evidence as defendant
included: an affidavit by  Stephenson,
the Credit Manager of Gore Bros.; an affidavit by Hill, the Chief Financial
Officer of Gore Bros.; an affidavit by Dudley, attorney for Gore Bros.; an
affidavit by Walters regarding reasonable attorney=s fees; and portions of Watson=s deposition.  Gore Bros.=s motion for summary judgment contained a copy of the secured note
signed by Watson, the credit application signed by Watson, and the financing
statement. 

We will
now address Watson=s
claim that Gore Bros. coerced him into signing the note.  Duress is the threat to do some act that the
threatening party has no right to do. 
This threat must take away a person=s free agency, overcome that person=s will, and cause that person to do something that the person would not
do or was not legally bound to do.   The
threat must be imminent.  Chapman
Children=s Trust v. Porter & Hedges, L.L.P., 32 S.W.3d 429 (Tex.App. B Houston [14th Dist.] 2000, pet=n den=d).  Economic duress occurs when
the allegedly threatening party is the cause of the plaintiff=s financial stress.  Deer Creek, Limited v. North American Mortgage Company,
792 S.W.2d 198 (Tex.App. B Dallas 1990, no writ).                  

It is
clear that Gore Bros. had a legal right to obtain payment for the feed sold to
Watson, and Watson testified that he felt pressure to sign the note only
because he needed to feed his cows and that he did not like owing people
money.  Gore Bros. was not the cause of
Watson=s financial stress. There is no fact issue as
to Watson=s duress claim. See Roberts v. U.S. Home
Corporation, 694 S.W.2d 129, 136 (Tex.App. B San Antonio 1985, no writ).

To prevail
on a claim of intentional infliction of emotional distress, a plaintiff must
show that  the defendant acted
intentionally or recklessly, that the conduct was extreme and outrageous, and
that this conduct caused the plaintiff severe emotional distress.  Twyman v. Twyman, 855 S.W.2d 619, 621‑22
(Tex.1993).  There is no evidence of
intentionally or recklessly extreme and outrageous behavior by Gore Bros.  Whether conduct is outrageous is a matter of
law.  Motsenbocker v. Potts, 863
S.W.2d 126 (Tex.App. B
Dallas 1993, no writ).  Liability for
outrageous conduct exists when: 

[C]onduct has been so outrageous in
character, and so extreme in degree, as to go beyond all possible bounds of
decency, and to be regarded as atrocious, and utterly intolerable in a
civilized community.  

 








Twyman v. Twyman, supra at 621.  Further, there is no showing of severe emotional distress.  See GTE Southwest, Incorporated v. Bruce,
998 S.W.2d 605 (Tex.1999).  Watson=s claim of intentional infliction of
emotional distress fails as a matter of law, and the trial court did not err
when it granted summary judgment on this issue.  

Watson=s claim against Gore Bros. for usury also
fails as a matter of law.  A person
who contracts for, charges, or receives interest that is greater than the
amount authorized by law is liable to the obligor for penalties set forth in
the usury statutes.  TEX. FIN. CODE ANN.
' 305.001 (Vernon
Supp. 2003). 

Here, the
credit application signed by Watson indicated that the interest rate to be
charged was the highest legal rate. 
Also, the secured note set the interest rate at 15 percent.  Both of these documents clearly show that
there was an agreement as to the interest rate and that it was not
usurious.    Watson offers no controverting
summary judgment evidence to rebut these documents.  The trial court did not err when it granted summary judgment on
the usury issue.  

Furthermore,
there is no evidence to support Watson=s claims under Chapter 392. 
Watson alleged that Gore Bros. used threats and coercion in collecting
the debt.  Watson offered his affidavit
as evidence of the threats.  He stated
that Gore Bros. made numerous phone calls, threatened to file charges against
him for the hot checks that he had written, reported him to the credit bureau,
and sued him.  However, none of the
statements made in his affidavit fall under the provisions of Section
392.301.  Section 392.301 provides:

(a) In
debt collection, a debt collector may not use threats, coercion, or attempts to
coerce that employ any of the following practices:

 

(1) using
or threatening to use violence or other criminal means to cause harm to a
person or property of a person;

 

(2)
accusing falsely or threatening to accuse falsely a person of fraud or any
other crime;

 

(3)
representing or threatening to represent to any person other than the consumer
that a consumer is wilfully refusing to pay a non-disputed consumer debt when
the debt is in dispute and the consumer has notified in writing the debt
collector of the dispute;

 








(4)
threatening to sell or assign to another the obligation of the consumer and
falsely representing that the result of the sale or assignment would be that
the consumer would lose a defense to the consumer debt or would be subject to
illegal collection attempts;

 

(5)
threatening that the debtor will be arrested for nonpayment of a consumer debt
without proper court proceedings;

 

(6)
threatening to file a charge, complaint, or criminal action against a debtor
when the debtor has not violated a criminal law;

 

(7)
threatening that nonpayment of a consumer debt will result in the seizure,
repossession, or sale of the person=s property without proper court proceedings; or

 

(8)
threatening to take an action prohibited by law.

 

(b) Subsection (a) does
not prevent a debt collector from:

 

(1)
informing a debtor that the debtor may be arrested after proper court
proceedings if the debtor has violated a criminal law of this state;

 

(2)
threatening to institute civil lawsuits or other judicial proceedings to
collect a consumer debt;  or

 

(3)
exercising or threatening to exercise a statutory or contractual right of
seizure, repossession, or sale that does not require court proceedings.

 

The
summary judgment evidence shows, as a matter of law, that Gore Bros. did not
engage in activities that violated Chapter 392.  The trial court was correct in its ruling on this issue.








Watson=s malicious prosecution and abuse of process claims
also fail as a matter of law.  The
elements of malicious prosecution are: (1) commencement of a criminal
prosecution against the plaintiff; (2) termination of the proceeding in favor
of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice
on the part of the defendant; and (5) damage to the plaintiff.  Richey v. Brookshire Grocery Co., 952
S.W.2d 515 (Tex.1997).  The record
before us does not show that the criminal case against Watson has terminated or
that there has been a final adjudication. 
A malicious prosecution cause of action will not accrue until after the
prosecution has ended and plaintiff has been proven innocent. Richey v.
Brookshire Grocery, Co., supra. 
Further, Watson testified that he had written checks to Gore Bros. when
he knew there was no money in the bank to pay them.  It is clear that there was probable cause to commence a criminal
charge against Watson.  Additionally,
there is no summary judgment evidence that Gore Bros. acted with malice.  The trial court did not err when it granted
summary judgment on this issue. 

Gore Bros.
has established that there are no material issues of fact as to any of Watson=s claims against it and that it is entitled
to summary judgment as a matter of law. 
We overrule Watson=s first issue on appeal.   

In his
second issue on appeal, Watson alleges that the trial court erred in entering a
final judgment without an order regarding the funds held in the registry of the
court.  Watson stated that he had
deposited $17,123.39 into the registry of the court.  There is no summary judgment evidence to show that this deposit
was made in connection with the civil case now before us on appeal. Therefore,
there are no material issues of fact in the issue relating to such deposit. We
overrule Watson=s second issue on appeal. 

We affirm
the judgment of the trial court.

 

JIM
R. WRIGHT                     

JUSTICE

 

September 4, 2003

Not designated for
publication.  See TEX.R.APP.P.
47.2(a).

Panel consists of:  Arnot, C.J., and

Wright, J., and McCall, J.