**AFFIRM; and Opinion Filed August 26, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01266-CV

### ROBERT RODRIGUEZ, Appellant
### V.
### SCOTT GINSBURG, Appellee

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-04978-2015**

# MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Osborne

Robert Rodriguez appeals the trial court's final summary judgment in favor of Scott Ginsburg. In three issues, Rodriguez argues the trial court erred when it: (1) granted Ginsburg's traditional motion for summary judgment; (2) granted Ginsburg's no-evidence motion for summary judgment; and (3) signed conflicting rulings on Ginsburg's and Rodriguez's objections to the summary judgment evidence and sustained all of Ginsburg's objections to Rodriguez's summary judgment evidence. We conclude the trial court did not err when it granted Ginsburg's traditional and no-evidence motions for summary judgment. The trial court's final summary judgment is affirmed.

## I. FACTUAL AND PROCEDURAL CONTEXT

In November 1998, Ginsburg and Rodriguez signed an employment agreement where Boardwalk Motorcars L.P. hired Rodriguez as the vice president or general manager of its Porsche

dealership. Boardwalk added additional dealerships over time. In March 2007, Rodriguez's employment with Boardwalk was terminated. Also in March 2007, Ginsburg, Boardwalk Motor Cars Ltd. d/b/a Boardwalk Porsche, and Boardwalk Automobiles Ltd. d/b/a Boardwalk Audi filed suit against Rodriguez and others, alleging, in part, that Rodriguez embezzled funds (cause no. 296-982-07 in the 296th Judicial District of Collin County, Texas). Rodriguez answered the lawsuit and alleged counterclaims against Ginsburg and Boardwalk.

A grand jury indicted Rodriguez for the offense of misapplication of fiduciary property in December of 2007, and he was re-indicted for the same offense two more times in 2008. *See* TEX. PENAL CODE ANN. § 32.45. During this time frame, Ginsburg provided the Collin County District Attorney's Office with information relating to Rodriguez.

On September 11, 2008, Ginsburg and Rodriguez settled their claims in cause no. 296-982-07. As consideration for their written settlement agreement inclusive of a release of "All Claims," the parties agreed, in part, not to sue one another for any claims. That release provision notwithstanding, the parties' written settlement agreement specifically excluded claims for breach of that agreement.

Following the settlement agreement, Ginsburg continued to provide the Collin County District Attorney's Office with information relating to Rodriguez; Rodriguez was re-indicted five more times, with the State filing motions to amend some of the indictments. In February 2015, the Collin County District Attorney's Office exercised its discretion to prosecute and tried Rodriguez for the charges in the surviving indictments. Ginsberg testified for the prosecution at Rodriguez's trial, but the jury found Rodriguez not guilty and he was acquitted.

On December 7, 2015, Rodriguez filed his original petition against Ginsburg alleging a claim for malicious criminal prosecution. Ginsburg answered the lawsuit by generally denying the allegations and asserting several affirmative defenses, including release. On May 4, 2016,

Rodriguez filed his first amended petition, adding a claim for continuing breach of contract against Ginsburg and asserting the counter-affirmative defense of failure of consideration to overcome Ginsburg's affirmative defense of release. Ginsburg filed a supplemental answer asserting, *inter alia*, the additional affirmative defense of immunity.

On May 31, 2017, Ginsburg filed his amended no-evidence and traditional motion for summary judgment, seeking: (1) no-evidence summary judgment on Rodriguez's claims for malicious criminal prosecution and continuing breach of contract, and his counter-affirmative defense of failure of consideration; and (2) sought traditional summary judgment on his affirmative defenses of release and immunity, and Rodriguez's claims for malicious criminal prosecution and continuing breach of contract. Rodriguez filed a response to the motion for summary judgment. With respect to Ginsburg's no-evidence motion, Rodriguez argued that he offered evidence for each challenged element of his claims for malicious criminal prosecution and continuing breach of contract, and his counter-affirmative defense of failure of consideration. As to Ginsburg's traditional motion for summary judgment, Rodriguez argued, in part, that "Ginsburg's [] affirmative defense of release must be denied due to [his counter-affirmative defense of] failure of consideration." Rodriguez did not file a competing motion for summary judgment on his claims or counter-affirmative defense of failure of consideration. However, Rodriguez did make objections to Ginsburg's summary-judgment evidence. On July 17, 2017, Ginsburg filed his objections to Rodriguez's summary judgment evidence.

On August 4, 2017, the trial court signed an order sustaining Ginsburg's objections to Rodriguez's summary judgment evidence and granting his no-evidence and traditional motion for summary judgment. The record does not show that Rodriguez sought a ruling on his objections to Ginsburg's summary judgment evidence.

On September 1, 2017, Rodriguez filed a motion to reconsider and a motion to rule on Rodriguez's objections to Ginsberg's summary judgment evidence. On November 16, 2017, the trial court vacated its August 4, 2017 order granting summary judgment and set a date when all objections and responses to the summary judgment evidence were due. Ultimately, the trial court sustained all of the parties' objections and reinstated its August 4, 2017 order granting summary judgment.

## II. SUMMARY JUDGMENT

In issue one, Rodriguez argues the trial court erred when it granted Ginsburg's traditional motion for summary judgment because: (1) Ginsburg failed to conclusively establish his right to judgment, as a matter of law, on Rodriguez's claims for malicious criminal prosecution and continuing breach of contract, and Ginsburg's affirmative defense of release; and (2) Rodriguez produced evidence raising an issue of material fact precluding summary judgment on his claim for continuing breach of contract. In issue two, Rodriguez argues the trial court erred when it granted Ginsburg's no-evidence motion for summary judgment because Rodriguez produced evidence as to each element of his claims for malicious criminal prosecution and continuing breach of contract, and his counter-affirmative defense of failure of consideration.

### A. Standard of Review

An appellate court reviews the grant of summary judgment de novo. *See Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 607 (Tex. 2013). When reviewing both traditional and no-evidence summary judgments, an appellate court considers the evidence in the light most favorable to the non-movant. *See Smith v O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). When a party has moved for summary judgment on both no-evidence and traditional grounds, an appellate court generally addresses the no-evidence motion first. *See* TEX. R. CIV. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.

2004); *Kennedy v. Harber*, No. 05-17-01217-CV, 2018 WL 3738091, at \*3 (Tex. App.—Dallas Aug. 7, 2018, no pet.) (mem. op.).  However, when the traditional motion is clearly dispositive of issues in the motion, an appellate court may look to it first on those issues.  *See Kennedy*, 2018 WL 3738091, at \*3.  When a trial court's order does not specify the grounds for its summary judgment, an appellate court must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious.  *See Provident Life & Acc. Ins. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 365 (Tex. App.–Dallas 2009, pet. denied).

### 1.  Traditional Summary Judgment

In a traditional motion for summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).  Specifically, for a defendant to be entitled to traditional summary judgment, he must conclusively negate at least one essential element of each of the plaintiff's cause of action or conclusively establish each element of an affirmative defense.  *See Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).  Evidence is conclusive only if reasonable people could not differ in their conclusions.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

In a traditional summary judgment, the burden of proof does not shift and the non-movant has no burden to respond unless and until the movant has conclusively established his entitlement to summary judgment on his cause of action or affirmative defense as a matter of law.  *See Rhone– Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999); *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989).  However, once the movant proves a right to summary judgment, the burden shifts to the non-movant to raise a genuine issue of material fact sufficient to defeat summary judgment.  *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000).  Further, if

the non-movant opposes the summary judgment by relying on an affirmative defense or counter-affirmative defense, he must produce summary judgment evidence sufficient to raise an issue of fact on each element of that affirmative defense to avoid summary judgment. *See Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984).

## 2. No-Evidence Summary Judgment

The no-evidence motion for summary judgment must specifically state the elements for which there is no evidence. TEX. R. CIV. P. 166a(i); *Bever Props., L.L.C. v. Jerry Huffman Custom Builder, L.L.C.*, 355 S.W.3d 878, 888 (Tex. App.—Dallas 2011, no pet.). The non-movant then has the burden to produce more than a scintilla of summary judgment evidence that raises a genuine issue of material fact as to each challenged element. TEX. R. CIV. P. 166a(i) & cmt. 1997; *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). Summary judgment is improper if the non-movant presents more than a scintilla of evidence supporting the disputed issue. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). More than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id.* Less than a scintilla of evidence exists if the evidence is so weak that it does no more than create a mere surmise or suspicion of a fact. *Id.*

### B. Traditional Summary Judgment on the Affirmative Defense of Immunity Based on Absolute Privilege

In part of issue one, Rodriguez argues the trial court erred when it granted Ginsburg's traditional motion for summary judgment because Ginsburg failed to conclusively establish his right to judgment, as a matter of law, on Rodriguez's claim for continuing breach of contract and he produced evidence raising an issue of material fact precluding summary judgment. On appeal, Rodriguez does not directly challenge the granting of traditional summary judgment as to his claim for breach of contract on Ginsburg's affirmative defense of immunity based on absolute privilege.

However, we note that, within the section of his brief challenging traditional summary judgment on Rodriguez's claim for malicious criminal prosecution with respect to the element of malice, Rodriguez addresses conditional privilege.

## 1. Applicable Law

It is well settled that we must affirm a summary judgment if the appellant fails to challenge every independent ground on which the judgment might be based. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970); *see also St. John Missionary Baptist Church v. Flakes*, 547 S.W.3d 311, 313–18 (Tex. App.—Dallas 2018, pet. pending) (en banc) (applying rule to a motion to dismiss and plea to the jurisdiction). The term "grounds" means the reasons that entitle the movant to summary judgment, in other words, "why" the movant should be granted summary judgment. *EMF Swiss Avenue L.L.C. v. Peak's Addition Home Owners' Ass'n*, No. 05-17-01112-CV, 2018 WL 6836715, at *5 (Tex. App.—Dallas Dec. 28, 2018, pet. filed); *Garza v. CTX Mortg. Co.*, 285 S.W.3d 919, 923 (Tex. App.—Dallas 2009, no pet.).

## 2. Application of the Law to the Facts

In the trial court, Ginsburg sought traditional summary judgment, in part, on Rodriguez's claim for continuing breach of contract and his affirmative defense of immunity based on absolute privilege as to that claim as well as Rodriguez's counter-affirmative defense of failure of consideration. Under the heading "Ginsburg did not engage in any conduct violative of the settlement agreement, and he is **immune** from suit based on his testimony in Rodriguez's criminal trial," Ginsburg argued, in part, that "[Rodriguez] admitted that other than Ginsburg's February 2015 testimony in the criminal proceedings, Rodriguez did not know of any other action or statement that he alleged was a breach of the settlement agreement. And . . . Ginsburg is entitled to **absolute immunity** for any testimony in the criminal proceedings." (Emphasis added.) In his

response to the traditional motion for summary judgment, Rodriguez did not address Ginsburg's affirmative defense of immunity based on absolute privilege.

On appeal, as previously noted, Rodriguez does not directly challenge the granting of traditional summary judgment as to Ginsburg's affirmative defense of immunity based on absolute privilege. Rather, Rodriguez addressed privilege as follows:

> Because the application of the doctrine of "absolute privilege" could possibly be used improperly as a sword (as Ginsburg attempts to do in the present case), rather than properly as a shield, Texas courts and the Restatement of the Law on torts have long distinguished between it, for communications made during judicial and quasi-judicial proceedings, and the qualified, or conditional privilege, for communications made in the public interest. [Citations omitted.]

> Not all communications to public officials are absolutely privileged, but may yet warrant protection to as being conditionally privileged: An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that (a) there is information that affects a sufficiently important public interest, and (b) the public interest requires the communication of the defamatory matter to a public officer or a private citizen who is authorized or privileged to take action if the defamatory matter is true. [Citations omitted.] ***This privilege is lost if abused, such as when the statement is made with malice and with knowledge of its falsity.***

(Emphasis in orig.) Even if we liberally construe Rodriguez's argument to address the granting of traditional summary judgment on Ginsburg's affirmative defense of immunity as to Rodriguez's claim for breach of contract, that argument addressed the applicability of conditional privilege, not absolute privilege.[1] Texas law recognizes two classes of privilege–absolute privilege and conditional or qualified privilege–and an absolute privilege is more properly thought of as an immunity while conditional privileges are "true privileges." *See, e.g., Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015). As a result, Rodriguez did not challenge the granting of traditional summary judgment on Ginsburg's affirmative defense of immunity based on absolute privilege.

---

[1] Ginsburg sought traditional summary judgment on his affirmative defense of immunity based on absolute privilege as to Rodriguez's claim for continuing breach of contract. However, in his briefs on appeal, Rodriguez's argument appears to contend that the affirmative defense was raised as to his claim for malicious criminal prosecution.

Because Rodriguez does not challenge the traditional summary judgment as to Ginsburg's affirmative defense of immunity based on absolute privilege, we decide part of issue one against Rodriguez.[2]  Accordingly, we need not address Rodriguez's remaining arguments relating to his claim for continuing breach of contract.

### C.  Traditional Summary Judgment on the Affirmative Defense of Release as to Malicious Criminal Prosecution Claim and No-Evidence Summary Judgment on the Counter-Affirmative Defense of Failure of Consideration

In part of issue one and part of issue two, Rodriguez argues the trial court erred when it granted: (1) Ginsburg's traditional motion for summary judgment on Ginsburg's affirmative defense of release as to Rodriguez's claim for malicious criminal prosecution; and (2) Ginsburg's no-evidence motion for summary judgment on Rodriguez's counter-affirmative defense of failure of consideration.

### 1.  Affirmative Defense of Release as to Claim for Malicious Prosecution

Rodriguez argues the trial court erred when it granted Ginsburg's traditional motion for summary judgment on Ginsburg's affirmative defense of release as to Rodriguez's claim for malicious criminal prosecution[3] because Ginsburg failed to conclusively establish each element of his affirmative defense.  The entirety of Rodriguez's argument on appeal is as follows:

> **Ginsburg failed to conclusively prove his affirmative defense of release as to Rodriguez's claim for malicious prosecution.**
>
> Ginsburg's Traditional Motion for Summary Judgment on Rodriguez's claim for *malicious prosecution* should have been denied.  Ginsburg failed to conclusively prove his affirmative defense of *release* as to Rodriguez's claim for malicious prosecution occurring post-settlement.  [Citation omitted.]  Since the 2008 settlement agreement expressly excluded release of claim for breach of the settlement agreement as explained above, Rodriguez's claims relative to malicious prosecution were not released since they occurred post-settlement and in violation

---

[2]  We express no opinion as to whether the affirmative defense of immunity based on absolute privilege applies to a breach-of-contract claim or whether conditional privilege applies to this case.

[3]  The elements to prove a malicious criminal prosecution are: (1) a criminal prosecution commenced against the plaintiff; (2) the defendant initiated or procured that prosecution; (3) the prosecution terminated in the plaintiff's favor; (4) the plaintiff was innocent of the charges; (5) the defendant lacked probable cause to initiate the prosecution; (6) the defendant acted with malice; and (7) the plaintiff suffered damages.  *See Graber v. Fuqua*, 279 S.W.3d 608, 662 n.1 (Tex. 2009); *Kroger Tex. Ltd. P'ship v. Subaru*, 216 S.W.3d 788, 792 n.3 (Tex. 2006).

of Ginsburg's covenant not to pursue "***any claim or any other action in any court, tribunal or forum, in any jurisdiction in these United States or elsewhere based on any alleged wrongful conduct by . . . Rodriguez.***"

We construe this argument to be that the scope of the release does not include Ginsburg's post-settlement actions of providing information to the Collin County District Attorney's Office and testifying against Rodriguez during the criminal trial. Ginsburg responds that the scope of the release includes Rodriguez's malicious criminal prosecution claim.

### a. Applicable Law

In general, a release surrenders legal rights or obligations between the parties to an agreement. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993); *Cox v. Robison*, 150 S.W. 1149, 1155 (Tex. 1912) (orig. proceeding). A release is a writing providing that a duty or obligation owed to one party is discharged immediately or on the occurrence of a condition. *See CarMax Business Servs. L.L.C. v. Horton*, No. 14-17-00840-CV, 2018 WL 3977962, at *3 (Tex. App.—Houston [14th Dist.] Aug. 21, 2018, no pet.) (mem. op.). To release a claim effectively, the releasing instrument must "mention" the claim to be released. *See Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 697–98 (Tex. 2000); *Naik v. Naik*, 438 S.W.3d 166, 175 (Tex. App.—Dallas 2014, no pet.); *McCullough v. Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871, 885 (Tex. App.—Dallas 2014, pet. denied). However, it is not necessary for the parties to anticipate and explicitly identify every potential cause of action relating to the subject matter of the release. *See Keck, Mahin & Cate*, 20 S.W.3d at 698; *Naik*, 438 S.W.3d at 175; *McCullough*, 435 S.W.3d at 885. Rather, a valid release may encompass unknown claims and damages that develop in the future. *See Keck, Mahin, & Cate*, 20 S.W.3d at 698; *Naik*, 438 S.W.3d at 175; *McCullough*, 435 S.W.3d at 885. Further, although the "mention" requirement does not bar general, categorical releases, such releases are to be narrowly construed. *See Naik*, 438 S.W.3d at 175; *McCullough*, 435 S.W.3d at 885.

Release is an affirmative defense. *See* TEX. R. CIV. P. 94. A release is a contractual arrangement that operates as a complete bar to any later action based upon matters covered in the release. *See Dresser*, 853 S.W.2d at 508; *Haddock v. Gruber*, No. 05-16-01113-CV, 2018 WL 1417453, at *11 (Tex. App.—Dallas Mar. 22, 2018, pet. denied); *McCullough*, 435 S.W.3d at 885. Essentially, a release extinguishes a claim and bars recovery on the released matter. Summary judgment evidence of an executed settlement agreement containing a release that was intended to address the plaintiff's claims in the lawsuit proves the release, which is valid on its face until set aside. *See Kennedy*, 2018 WL 3738091, at *4.

Once the movant establishes the affirmative defense of release as a matter of law, then the non-movant must raise a fact issue as to a legal justification for setting aside the release. *See Deer Creek Ltd. v. N. Am. Mortg. Co.*, 792 S.W.2d 198, 202 (Tex. App.—Dallas 1990, no writ). A trial court may grant summary judgment on the release itself if the party relying on the release proves the release as a matter of law and the non-movant fails to raise a material fact issue on its counter-affirmative defense. *See Kennedy*, 2018 WL 3738091, at *4.

### b. Application of the Law to the Facts

The record shows that Rodriguez was first indicted by a grand jury on December 18, 2007. Also, the record shows that, after Rodriguez had been indicted and re-indicted two times, Ginsburg and Rodriguez settled their claims in cause no. 296-982-07 on September 11, 2008. Ginsburg attached the written settlement agreement, executed by both Ginsburg and Rodriguez, to his motion for summary judgment. The settlement agreement included a broad release, stating that "Rodriguez [] agree[s] and hereby covenant[s] not to sue [Ginsburg] for All Claims." The settlement agreement defined "All Claims" as follows:

> **[A]ll existing, known and unknown claims, demands, and causes of action for all existing, past as well as future damages and remedies that arise out of or relate to the Matters in Dispute and/or the Litigation whether such damages are known or unknown.** Under this definition, "All Claims" includes, but is not

limited to, all claims, demands, lawsuits, debts, accounts, covenants, agreements, actions, cross-actions, liabilities, obligations, losses, costs, expenses, remedies, liens, whether originating under statute or at common law, and causes of action of any nature, whether in contract or tort, based upon fraud or misrepresentation, breach of a legal duty, or arising under or by virtue of any judicial decision, statute or regulation, whether state or federal, **for past, present, future, known and unknown personal injuries, property or economic damage, and all other losses and damages and/or relief of any kind**, including, but not limited to the following: all actual damages, including economic damages, damages for mental anguish and pain and suffering, exemplary (punitive) damages, liquidated damages, attorney's fees or costs of suit, and injunctive relief; all penalties of any kind, including without limitation, any tax liabilities or penalties; damage to reputation; lost profits or good will; consequential damages; and prejudgment and post[-]judgment interest. This definition further includes, but is not limited to, all claims, demands, and causes of action which [Ginsburg] and/or Rodriguez [] may have now or in the future by virtue of assignment or otherwise, arising out of the manner in which the Parties' counsel handled, settled, or defended any claims, demands, or causes of action asserted in the Litigation. This definition further includes, but is not limited to all elements of damages, all remedies, and all claims, demands, and causes of action that are now recognized by law or that may be created or recognized in the future by any manner, including without limitation by statute, regulation, or judicial decision. This definition does not include any claim for breach of this Settlement Agreement.

(Emphasis added.) Also, the settlement agreement defined "Matters in Dispute" to include, in part, the following:

[All matters] that concern, relate to, and/or arise out of the alleged wrongful conduct by [Ginsburg] and/or Rodriguez [] at any time before the Effective Date[.]

Further, the settlement agreement contained the following agreement:

The Parties each agree never to bring any suit or any other action against one another for any of the matters made the subject of this Settlement Agreement. This Settlement Agreement may be [pleaded] in bar of any suit or action brought or taken in violation of this covenant. The prevailing party shall be entitled to attorney's fees and expenses in any suit in which this Settlement Agreement is specifically [pleaded] as a defense to any action brought in violation hereof.

Following the execution of the settlement agreement, the record shows that Ginsburg continued to provide information to the Collin County District Attorney's Office relating to Rodriguez. The Collin County District Attorney's Office prosecuted the charges, but the jury

found him not guilty and Rodriguez was acquitted. It is these actions that Rodriguez contends are not covered by the scope of the release.

In this case, Ginsburg's summary judgment evidence included an executed copy of the settlement agreement containing a release. Rodriguez does not dispute that he signed the settlement agreement containing the release or assert that it is ambiguous. The broad language of the release shows that it was intended to address future claims as well as claims existing at the time the settlement agreement was executed, which would include Rodriguez's claim for malicious criminal prosecution. *See Keck, Mahin, & Cate*, 20 S.W.3d at 698 (valid release may encompass unknown claims and damages that develop in future); *Naik*, 438 S.W.3d at 175; *McCullough*, 435 S.W.3d at 885. Accordingly, Ginsburg's evidence proves the release, which is valid on its face until set aside. *See Kennedy*, 2018 WL 3738091, at *3–4.

The portion of issue one arguing the trial court erred when it granted traditional summary judgment in favor of Ginsburg on his affirmative defense of release is decided against Rodriguez. However, because we have concluded that Ginsberg conclusively established the release as a matter of law, we must address Rodriguez's argument that he raised a material fact issue on his counter-affirmative defense of failure of consideration.

### 2. Counter-Affirmative Defense of Failure of Consideration

In part of issue two, Rodriguez claims the trial court erred when it granted Ginsburg's no-evidence motion for summary judgment on his counter-affirmative defense of failure of consideration because he produced more than a scintilla of evidence to support each challenged element. Ginsburg responds that Rodriguez fails to specify whether he is asserting a complete or total failure of consideration or a partial failure. Also, Ginsburg contends that there is no evidence that he solicited Rodriguez's criminal prosecution after September 2008 and even if he had, the settlement agreement does not prohibit him from doing so.

### a. Applicable Law

A failure of consideration occurs when the promised performance fails because of some supervening cause arising after the contract is formed. *See Cheung-Loon, L.L.C. v. Cergon, Inc.*, 392 S.W.3d 738, 747 (Tex. App.—Dallas 2012, no pet.); *McGraw v. Brown Realty*, 195 S.W.3d 271, 276 (Tex. App.—Dallas 2006, no pet.). Failure of consideration may result as a consequence of one party's failure to perform its obligations under the agreement. *McGraw*, 195 S.W.3d at 276. Only a substantial failure of consideration will operate to discharge the other party. *See Carter v. PeopleAnswers, Inc.*, 312 S.W.3d 308, 312 (Tex. App.—Dallas 2010, no pet.). There are two types of failure of consideration: partial failure and complete or total failure.[4] *See Cheung-Loon*, 392 S.W.3d at 748. A complete or total failure of consideration constitutes a defense to an action on a written agreement and is a ground for cancellation or rescission of the contract. *Id.* A partial failure of consideration does not invalidate the contract but entitles the injured party to a suit for damages. *See Carter*, 312 S.W.3d at 312. It is a defense *pro tanto*. *See Cheung-Loon*, 392 S.W.3d at 748. Moreover, the right of rescission is waived by the injured party's retention of the partial performance rendered by the breaching party. *See Carter*, 312 S.W.3d at 312.

Failure of consideration is an affirmative defense. *See* TEX. R. CIV. P. 94. Because a written contract is presumed to be supported by consideration, the burden is on the party asserting the affirmative defense to prove there was a failure of consideration. *See Barnes v. Old Am. Mut. Fire Ins.*, No. 03-07-00404-CV, 2010 WL 668913, at *6 (Tex. App.—Austin Feb. 26, 2010, no pet.); *Rodriguez v. Sw. Drug Corp.*, 619 S.W.2d 469, 472 (Tex. App.—Houston [14th Dist.] 1981, no writ). When a party seeks to rely on the affirmative defense of failure of consideration, that party must prove the absence of the elements of consideration. *See Dyer v. Metallic Bldg. Co.*, 410 S.W.2d 56, 59 (Tex. App.—Tyler 1966, no writ). The affirmative defense of failure of

---

[4] We also note that a want or lack of consideration is different from a failure of consideration. *See Cheung-Loon*, 392 S.W.3d at 747.

consideration defeats summary judgment if the non-movant alleges facts and presents evidence that the consideration in the agreement was not received. *McGraw*, 195 S.W.3d at 276.

Consideration is a bargained for exchange of promises. *See Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 790 (Tex. 2008); *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991) (present exchange bargained for in return for promise). Consideration consists of either a benefit to the promisor or a detriment to the promisee. *See Ulico Cas.*, 262 S.W.3d at 790; *Roark*, 813 S.W.2d at 496. The detriment must induce the making of the promise and the promise must induce the incurring of the detriment. *See Ulico Cas.*, 262 S.W.3d at 790; *Roark*, 813 S.W.2d at 496.

### b. Application of the Law to the Facts

First, while Rodriguez does not specify whether he is asserting a partial failure, or a complete or total failure of consideration, he contends that Ginsburg's failure to fulfill the specified consideration rendered the settlement agreement, including the release, "worthless." As a result, we understand his argument to be that there was a complete or total failure of consideration, which entitles him to rescind the release in the settlement agreement. However, the settlement agreement contained nine types of consideration[5] and Rodriguez argues only that one of the nine types of

---

[5] The settlement agreement provides that "Consideration" means:

    a.    [Ginsburg] agree[s] and hereby covenant[s] not to sue Rodriguez [] for All Claims.

    b.    Rodriguez [] agree[s] and hereby covenant[s] not to sue [Ginsburg] [] for all Claims.

    c.    Upon execution of the Settlement Agreement by the Parties, Rodriguez [] agree[s] to the immediate release of all sums being held in the registry of any court for [his] benefit, including sums held in the registry of the 296th Judicial District Court in this Litigation and in No. 296-3683-03, Classical Custom Homes, Inc. v. Robert E. Rodriguez and Carina D. Rodriguez v. Michael J. Marsolek and Brook L. Marsolek, 296th Judicial District Court, Collin County, Texas.

    d.    Without either Rodriguez [] or [Ginsburg] agreeing or admitting that Rodriguez [] ever owned an interest in any of [Ginsburg's or Boardwalk's] or other affiliated enterprises and upon execution of the Settlement Agreement by the Parties, Rodriguez [] will execute a quit claim of all right, title and interest of every kind in the entities listed below in the form of Conveyance in Exhibit A:

        i.    Boardwalk Automobiles, Ltd[.] d/b/a Boardwalk Audi;
        ii.    Boardwalk Exotic Cars Ltd[.] d/b/a Boardwalk Maserati;
        iii.    Boardwalk Motor Cars. Ltd. d/b/a Boardwalk Porsche;
        iv.    Boardwalk Motor Imports Ltd[.] d/b/a Lamborghini Dallas;
        v.    Boardwalk Motor Imports South Ltd[.] d/b/a Lamborghini Houston;
        vi.    Boardwalk Motor Sports Ltd[.] d/b/a Boardwalk Ferrari;
        vii.    Boardwalk Transportation North Ltd[.] d/b/a Boardwalk Volkswagen McKinney;

consideration failed, i.e., "[Ginsburg] agree[s] and hereby covenant[s] not to sue Rodriguez [] for All Claims." Accordingly, we conclude Rodriguez alleges only a partial failure of consideration, which would not entitle him to rescission of the settlement agreement or, more specifically, the release. *See Carter*, 312 S.W.3d at 312.

---

      viii.   Boardwalk Transportation South Ltd[.] d/b/a Boardwalk Volkswagen Park Cities;
      ix.   Boardwalk Transportation. L[.]P[.] d/b/a Boardwalk Volkswagen;
      x.   2405 Crown Road Ltd[.];
      xi.   300 North Central Ltd[.];
      xii.   5555 Lemmon Avenue Ltd[.];
      xiii.   5930 West Plano Parkway Ltd[.];
      xiv.   601 S. Central Expressway Ltd[.];
      xv.   GWF Land Holdings; and
      xvi.   13921 North Freeway Ltd.

e.    When this Settlement Agreement is signed by the Parties and delivered to [Ginsburg], Rodriguez [] will deliver to [Ginsburg] a Rolex watch that Carina Rodriguez says she and [] Ginsburg picked out for [] Rodriguez but which was paid for by [Ginsburg] as part of paying the entirety of Rodriguez['s] [] American Express account(s).

f.    Rodriguez [] and [his] counsel shall cooperate as necessary to effectuate the transfers of money held in the registry of any court for the benefit of Rodriguez [] to [Ginsburg], including by cooperating with information necessary to draft and by executing documents required to effectuate the transfer of such money. [Ginsburg's] counsel and Rodriguez['s] [] counsel shall cooperate with the actions and, where necessary and mutually agreed, activities as may be necessary to carry out the stated objectives as set forth in this Agreement. [Ginsburg] and Rodriguez [] hereby authorize their counsel to sign the [] *Joint Motion for the Release of Funds Held in the Registry of this Court*, Exhibit B, and the proposed order thereon, *Order Granting Release of Funds to Plaintiffs*, Exhibit C, and further agree to [Ginsburg's] filing of same immediately after execution of this Settlement Agreement.

g.    Upon execution of this Settlement Agreement by Rodriguez [] and [Ginsburg], Rodriguez [] agree[s] to deliver to [Ginsburg] and/or [sic] [Ginsburg's] counsel a sworn financial statement truthfully, accurately and fully disclosing everything of value in excess of $500 cost, whether exempt or nonexempt from collection–

    i.   Including without limitation all assets and liabilities of every type, character and nature owned, controlled or being held for the benefit of Rodriguez [];
    ii.   Further including without limitation all fractional ownership or beneficial ownership interests; and
    iii.   Further including without limitation:
        (1) Jewelry, Including watches;
        (2) Automobiles;
        (3) Art;
        (4) Clothing, including suits and furs;
        (5) Real property, including fractional interests in oil and gas properties;
        (6) Accounts, including:
           (a) any type of a demand deposit account, checking or negotiable withdrawal order account, savings account, time deposit account, money market mutual fund account, certificate of deposit, or any other instrument of deposit in which an individual has a beneficial ownership either in its entirety or on a shared or multiple party basis, including any accrued interest and dividends; and
           (b) life insurance policies in which an individual has a beneficial ownership; and
           (c) liability insurance against which an individual could or has filed a claim or counterclaim.

h.    [Ginsburg] and Rodriguez [] agree to dismiss with prejudice this litigation by signing the [] *Motion for Partial Nonsuit with Prejudice*, Exhibit D, and *Order of Partial Non-suit with Prejudice*, Exhibit E, which Plaintiffs will file immediately upon receipt of the money held in the registry of the 296111 Judicial District Court in Collin County, Texas.

i.    [Ginsburg] and Rodriguez []agree that neither of them shall be responsible for, or liable for, any other party's taxes, penalties, interest, fines or any obligation of whatever characterization to any governmental authority as a consequence of this Settlement Agreement each party agreeing to be solely responsible for his, her or its own reporting obligation and/or [sic] tax-related obligation and/or payment of taxes, penalties, interest and/or fines owed to or assessed by any taxing authority.

Second, Rodriguez argues that he produced the following summary judgment evidence to defeat no-evidence summary judgment on his counter-affirmative defense of failure of consideration: (1) Ginsburg was a major contributor to the Collin County District Attorney's campaign; (2) Ginsburg's claims were not investigated by law enforcement officials; (3) Ginsburg engaged in secret negotiations to sell the auto dealerships, including Rodriguez's alleged 5% ownership; (4) Ginsburg "shut Rodriguez out" of the auto dealership and accused him of misappropriation of partnership funds at the time he was engaging in the secret negotiations; (5) Ginsburg was also redirecting partnership funds for his personal use; (6) the payments Ginsburg claimed were embezzled by Rodriguez were actually tax deductible expenses on the partnership's tax returns for which the partnership received a tax benefit; and (7) Ginsburg's attorney was instrumental in obtaining Rodriguez's prosecution and ultimately was employed by the Collin County District Attorney's Office.[6]  Also, Rodriguez maintains that based on the terms of the settlement agreement, Rodriguez had a reasonable expectation that Ginsburg would take efforts to terminate the criminal proceedings, including the submission of an affidavit of non-prosecution, and it is reasonable to believe that the Collin County District Attorney's Office would have honored Ginsburg's request to terminate the criminal proceedings.

The text of the portion of the settlement agreement containing the consideration at issue provides that Ginsburg agrees not to sue Rodriguez.  It does not encompass providing information to or cooperating with the district attorney, testifying in a criminal proceeding, or require Ginsburg to terminate the criminal proceedings or submit an affidavit of non-prosecution.  Further, the criminal action was not brought by Ginsburg.  It was the result of the Collin County District Attorney exercising his discretion to prosecute and brought by the State of Texas.  In addition, the record shows that the State indicted and twice re-indicted Rodriguez before the settlement

---

[6] We note that in his brief on appeal Rodriguez does not provide citations to the record showing where this evidence may be found.

–17–

agreement was executed. Finally, Rodriguez's argument that it is reasonable to believe that the Collin County District Attorney's Office would have honored Ginsburg's request to terminate the criminal proceedings is not supported by evidence, but merely speculative.

We conclude that the trial court did not err when it granted no-evidence summary judgment on Rodriguez's counter-affirmative defense of failure of consideration. The portion of issue two arguing the trial court erred when it granted no-evidence summary judgment in favor of Ginsburg on Rodriguez's counter-affirmative defense of failure of consideration is decided against him. Accordingly, we need not address the Rodriguez's remaining arguments relating to his claim for malicious criminal prosecution.

## IV. FINAL JUDGMENT AND SUMMARY JUDGMENT EVIDENCE

In issue three, Rodriguez argues the trial court erred when it signed two final summary judgments that had conflicting evidentiary rulings on Ginsburg's and Rodriguez's objections to the summary judgment evidence. He contends this caused the mutual cancelation of those evidentiary rulings and resulted in the admission of all of the objected-to evidence. However, subsequent to Rodriguez filing his brief, a corrected supplemental clerk's record was filed in this appeal. That record indicates that one of the final summary judgments was incorrect and should not have been entered. It also contains a nunc pro tunc order vacating the incorrect order and affirming the correct order.

In response to the filing of the corrected supplemental clerk's record, Rodriguez filed a motion to amend and supplement his brief as to his third issue on appeal. That motion is granted by separate order. In that supplemental argument, Rodriguez argues the trial court erred when it sustained Ginsburg's objections to his summary judgment evidence. Specifically, Rodriguez argues that his Exhibit H (Texas Department of Transportation Ownership and Management Information for Boardwalk), Exhibit J (the State's "case prep" file created during the criminal

–18–

prosecution), Exhibit O (the confidentiality agreement relating to Ginsburg's efforts to sell the dealerships), and Exhibits S and T (correspondence between Ginsburg's representative and the special prosecutor) were admissible and Ginsburg's objections should have been overruled. Rodriguez contends the exclusion of these exhibits probably caused the rendition of an improper judgment. However, based on our resolution of Rodriguez's other issues, which does not include the contested summary judgment evidence, we need not address the supplemental argument for issue three.

Issue three is decided against Rodriguez.

## V.  CONCLUSION

The trial court did not err when it granted Ginsburg's traditional and no-evidence motion for summary judgment.

The trial court's final summary judgment is affirmed.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

171266F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROBERT RODRIGUEZ, Appellant

No. 05-17-01266-CV          V.

SCOTT GINSBURG, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas
Trial Court Cause No. 366-04978-2015.
Opinion delivered by Justice Osborne; Justices Schenck and Reichek, participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Scott Ginsburg recover his costs of this appeal from appellant Robert Rodriguez.

Judgment entered this 26th day of August, 2019.